UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                    :
SUQIN ZHU, INDIVIDUALLY AND ON                      :
BEHALF OF ALL OTHER EMPLOYEES                        :
SIMILARLY SITUATED,                                 :
                                                    :
                                Plaintiffs,         :        16 Civ. 5589 (KPF)
                                                    :
                 v.                                 :        OPINION AND ORDER
                                                    :
HAKKASAN NYC LLC, HAKKASAN                           :
HOLDINGS, LLC,                                       :
                                                    :
                                Defendants.         :
                                                    :
------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: November 28, 2017

KATHERINE POLK FAILLA, District Judge:

        Defendants move, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1

to 16 (the "FAA"), to compel arbitration of Plaintiffs' claims alleging violations of

the Fair Labor Standards Act, 29 U.S.C. §§ 201 to 219 (the "FLSA"), and the

New York Labor Law (the "NYLL") on a class and collective action basis, as well

as individual discrimination claims under the New York State Human Rights

Law (the "NYSHRL") and New York City Human Rights Law (the "NYCHRL").

What is more, Defendants request that this Court order arbitration on an

individual basis.  Plaintiffs oppose the motion, claiming that the arbitration

agreement that each signed (the "Arbitration Agreement" or "Agreement") is

unconscionable because (i) Plaintiffs were told to sign the Agreement

immediately upon viewing it, without receiving translated versions in Plaintiffs'

native languages, and (ii) the Agreement contains a confidentiality clause that,

in Plaintiffs' view, is invalid under *Cheeks* v. *Freeport Pancake House*, 796 F.3d

199 (2d Cir. 2015), and dissuades employees from bringing claims against Defendants. In the alternative, Plaintiffs ask the Court to strike the confidentiality clause and to order that arbitration proceed on a collective basis.

As detailed in the remainder of this Opinion, the Court finds that the Arbitration Agreement is valid and enforceable and that Plaintiffs' claims fall within its scope. Accordingly, the Court grants Defendants' motion to compel arbitration. However, because the availability of collective arbitration is not a "question of arbitrability," the Court reserves the question for the arbitrator. The Court similarly finds that Plaintiffs' claim that the confidentiality clause is invalid under *Cheeks* is not a "question of arbitrability" and must therefore be decided in the first instance by the arbitrator.

## BACKGROUND[1]

### A. Factual Background

#### 1. Plaintiffs' Employment at Defendants' Restaurant

Plaintiff Suqin Zhu was employed by Defendants as a sous chef at their restaurant — located at 311 West 43rd Street in Manhattan — from February 15, 2012 to July 1, 2016. (Compl. ¶¶ 9, 18). Nelson Leung was employed by Defendants as a sous chef starting in January 2012. (Leung Decl. ¶ 2). Lip

---

[1]      For ease of reference, the Court refers to the Complaint as "Compl." (Dkt. #1); to Defendants' opening brief as "Def. Br." (Dkt. #34); to Plaintiffs' opposition brief as "Pl. Opp." (Dkt. #37); to Defendants' reply as "Def. Reply" (Dkt. #38); to Plaintiff Nelson Leung's Declaration in Opposition to Defendants' Motion to Compel Arbitration as "Leung Decl." (Dkt. #36-2); to Plaintiff Lip Kuen Moy's Declaration in Opposition to Defendants' Motion to Compel Arbitration as "Moy Decl." (Dkt. #36-3); and to the Arbitration Agreement as "Arb. Agmt." (Dkt. #36-4).

Kuen Moy was employed by Defendants as a kitchen prep worker starting in January 2012.  (Moy Decl. ¶ 2).

### 2.    Plaintiffs' Alleged Violations of the FLSA, NYLL, NYCHRL, and NYSHRL

On July 12, 2016, Plaintiff Zhu signed a Consent to Sue Under Federal Fair Labor Standards Act.  (Compl., Ex. 1).  The next day — July 13, 2016 — Zhu filed a Collective Action Complaint against Defendants Hakkasan NYC LLC and Hakkasan Holdings, LLC.  (Compl.).  Plaintiff Zhu alleged that: (i) between March 17, 2013, and July 1, 2016, Defendants failed to provide Zhu with overtime compensation for time worked beyond 40 hours each workweek (*id.* at ¶ 29); (ii) "Plaintiff's workdays frequently lasted longer than 10 hours," but "Defendants did not pay Plaintiff 'spread of hours' premium for every day in which she worked over 10 hours" (*id.* at ¶¶ 37, 38); (iii) Defendants misclassified Plaintiff and other members of the contemplated class as salaried, exempt employees (*id.* at ¶ 35); (iv) "Defendants did not provide Plaintiff with proper written notice about the terms and conditions of her employment upon hire [or upon pay increases] in relation to their rate of pay, regular pay cycle[,] and rate of overtime pay" (*id.* at ¶ 38); (v) Defendants failed to provide detailed paystub information every payday (*id.* at ¶¶ 80-81); (vi) Zhu, who is Han Chinese, was required to work substantially more hours for the same pay as her Caucasian colleagues who performed similar work functions (*id.* at ¶¶ 41-43); and (vii) Defendants provided Caucasian employees with more paid holidays than they did to Chinese employees (*id.* at ¶ 45).

Plaintiff Zhu brought these claims on behalf of herself and "all persons who are or were formerly employed by Defendants as a sous chef and other similarly situated current and former employee[s] holding comparable positions but different titles, at any time from July 30, 2012 to the entry of judgment in this case." (Compl. ¶ 46). On November 8, 2016, Leung and Moy signed consent to sue forms similar to that originally executed by Zhu. (Dkt. #21, 22).

### 3. Plaintiffs' Arbitration Agreement

As a condition of their employment by Defendants, Plaintiffs signed a Dispute Resolution/Arbitration Agreement. (Arb. Agmt.). Zhu executed the Agreement on February 15, 2012; Moy, on February 13, 2012; and Leung, on January 26, 2012. (*Id*.). In declarations filed with the Court, Zhu, Leung, and Moy all stated that, "[around the start of my employment] I was provided with a document in English that resembles the arbitration agreement at issue." (Zhu Decl. ¶ 5, Leung Decl. ¶ 5, Moy Decl. ¶ 5). All further stated that, "I was asked by a Chinese speaking secretary at Hakkasan to sign the document without first having the document translated to me[; t]he secretary informed me that the document must be signed immediately[; and b]efore signing the document I never had any opportunity to determine its contents, or understand its implications." (Zhu Decl. ¶¶ 6-7, Leung Decl. ¶¶ 6-7, Moy Decl. ¶¶ 6-7).

In the Arbitration Agreement, each Plaintiff agreed to "waive [his/her] right to a court and/or jury trial and agree[d] that disputes relating to [his/her] employment, or the termination of such employment, shall be decided by a

mutually agreed-upon Arbitrator in final and binding arbitration." (Arb. Agmt. 1). Each further agreed to:

> bring any and all claims [he/she] may wish to assert against the Company, other than those claims specifically excluded below, only through arbitration. Such claims, whether based upon statute, regulation, contract, tort, or other common law principles, include but are not limited to, any claim for breach of contract, unpaid wages, wrongful termination, violation of federal, state[,] or city laws forbidding discrimination, harassment, and retaliation on the basis of race, color, religion, gender, sexual orientation, age, national origin, disability, and any other protected status which may be brought under applicable federal, state[,] or local law, and disputes relating to the interpretation of this Agreement.

(*Id.*). The Agreement goes on to describe the arbitration process, specifying that arbitration "shall be before a single Arbitrator ... and conducted in accordance with the Employment Arbitration Rules of the American Arbitration Association to the extent consistent with applicable law, including the Federal Arbitration Act, the Federal Rules of Civil Procedure (relating to filing deadlines, discovery processes, and dispositive motions), and the Federal Rules of Evidence (relating to the presentation of evidence)." (*Id.*).

### 4. Plaintiffs' Linguistic Backgrounds

Plaintiff Zhu's native language is Mandarin Chinese. (Zhu Decl. ¶ 4). Leung's and Moy's native language is Cantonese Chinese, and both are fluent in Mandarin Chinese. (Leung Decl. ¶ 4, Moy Decl. ¶ 4). According to their declarations, Zhu, Leung, and Moy are unable to read or understand English. (Zhu Decl. ¶ 4, Leung Decl. ¶ 4, Moy Decl. ¶ 4).

## B.    Procedural Background

Plaintiff Zhu commenced this putative collective action by filing the Complaint on July 13, 2016, on behalf of all persons employed by Defendants as sous chefs and other similarly situated employees holding comparable positions after July 30, 2012.  (Compl. ¶ 46).  In lieu of answering the Complaint, Defendants filed a pre-motion letter on October 18, 2016, requesting leave to move to compel arbitration and dismiss the case pursuant to Federal Rule of Civil Procedure 12(b) or stay the action pursuant to the FAA, and for costs and fees associated with the pre-motion letter.  (Dkt. #14).  The bases for the anticipated motion, which was directed specifically to Plaintiff Zhu, were that: "[i] Plaintiff signed a valid and enforceable arbitration agreement in consideration for her employment; [ii] Plaintiff's claims fall within the scope of the arbitration provision; and [iii] Plaintiff has withheld her consent to withdraw this lawsuit and proceed to arbitration."  (*Id.* at 1).

On October 20, 2016, Plaintiff Zhu filed a letter motion requesting leave to file a motion to certify a collective action.  (Dkt. #16).  On October 21, 2016, Plaintiff Zhu filed a subsequent letter opposing Defendants' pre-motion letter to compel arbitration in which Zhu argued that she "was fraudulently induced into signing the agreement."  (Dkt. #18).  Zhu asserted that "a binding agreement was never created since it was never fully executed" and that "arbitration agreements, such as the one at issue here are incompatible with recent Second Circuit case law, namely *Cheeks* v. *Freeport Pancake House Inc.*, 796 F.3d 199 (2d Cir. 2015)."  (Dkt. #18).

At a pre-motion conference on October 27, 2016, the Court considered Plaintiff Zhu's request for leave to file a certification motion and Defendants' request for leave to file a motion to compel arbitration. At that conference, the parties indicated that they wished to engage in settlement discussions before engaging in motion practice. For that reason, the Court did not rule on the parties' letter motions. (Dkt. #20).

On November 8, 2016, Leung and Moy filed consent forms. (Dkt. #21, 22). The Court notes that it had not certified a collective action in this case and that, to this day, Plaintiffs have filed neither a conditional certification motion nor an amended complaint adding Leung and Moy as plaintiffs. However, the parties' submissions refer to Leung and Moy as individual plaintiffs and state that Leung and Moy joined the case when they filed consents to sue. (*See* Def. Br.; Pl. Opp.; Def. Reply). The Court adopts the parties' framework and, following the parties' lead, refers to Leung and Moy as Plaintiffs in this action.

On March 31, 2017, after the parties tried unsuccessfully to settle the case, the Court ordered Defendants to file their motion to compel arbitration on or before April 20, 2017; Plaintiffs to file their opposition on or before May 11, 2017; and Defendants to file their reply, if any, on or before May 25, 2017. (Dkt. #32). The parties filed their papers accordingly. (*See* Dkt. #33-38).

**DISCUSSION**

**A.    Applicable Law**

    **1.    Federal Policy Favoring Arbitration Agreements**

A court's decision to compel arbitration, or not, is governed by the FAA. Section 2 of the FAA provides that "[a] written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "This provision establishes 'a liberal federal policy favoring arbitration agreements.'"  *CompuCredit Corp.* v. *Greenwood*, 565 U.S. 95, 98 (2012) (quoting *Moses H. Cone Memorial Hosp.* v. *Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)); *see Arciniaga* v. *Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006) ("[I]t is difficult to overstate the strong federal policy in favor of arbitration[.]").  The FAA "requires courts to compel arbitration in accordance with the terms of an arbitration agreement, upon the motion of either party to the agreement, provided that there is no issue regarding its creation."  *Kutluca* v. *PQ New York Inc.*, No. 16 Civ. 3070 (VSB), 2017 WL 2963486, at *7 (S.D.N.Y. July 10, 2017) (citations omitted).

The FAA applies with equal force in the employment context, and courts have consistently upheld arbitration agreements — like the one here — between employers and employees.  *See, e.g., Circuit City Stores, Inc.* v. *Adams*, 532 U.S. 105, 123 (2001) ("Arbitration agreements allow parties to avoid the costs of litigation, a benefit that may be of particular importance in

employment litigation[.]"); *Victorio* v. *Sammy's Fishbox Realty Co., LLC*, No. 14 Civ. 8678 (CM), 2015 WL 2152703, at \*19 (S.D.N.Y. May 6, 2015) ("Courts in this District have repeatedly found both FLSA and NYLL claims to be arbitrable."). As the Second Circuit has stated, the FAA "certainly does not preclude the enforcement of employment contracts which make employment conditional upon an employee's acceptance of mandatory arbitration." *Ragone* v. *Atl. Video at the Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010) (citing *Gilmer* v. *Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991) ("[m]ere inequality in bargaining power" is not a basis for declining to enforce arbitration agreements contained in employment contracts)).

Whether a valid arbitration agreement exists "is a matter of contract." *AT&T Mobility LLC* v. *Concepcion*, 563 U.S. 333, 339 (2011). Put differently, "[a]rbitration is strictly 'a matter of consent.'" *Granite Rock Co.* v. *Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (quoting *Volt Info. Scis., Inc.* v. *Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). Accordingly, a court order compelling arbitration is warranted where the parties entered into a valid, enforceable agreement. Conversely, "[i]f there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Bensadoun* v. *Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003).

There are four factors that courts must consider in determining whether to send an action to arbitration:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of the agreement; third, if federal statutory claims are

> asserted, it must consider whether Congress intended those claims to be nonarbitrable; and, fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

*Oldroyd* v. *Elmira Sav. Bank, FSB*, 134 F.3d 72, 75-76 (2d Cir. 1998).

In deciding a motion to compel arbitration under the FAA, "the court applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun*, 316 F.3d at 175. "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Id.* (citing 9 U.S.C. § 4). But "[i]f the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Oppenheimer & Co., Inc.* v. *Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995). The "party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Harrington* v. *Atl. Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010); *see also Green Tree Fin. Corp.-Alabama* v. *Randolph*, 531 U.S. 79, 91 (2000) ("[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration.").

### 2. Enforceability of Arbitration Agreements

Whether parties agreed to arbitrate is determined under state law. *See Bell* v. *Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002) ("Because an agreement to arbitrate is a creature of contract … the ultimate question of whether the parties agreed to arbitrate is determined by state law."). Under

10

New York law,[2] the party seeking arbitration must prove by a preponderance of the evidence that a valid arbitration agreement exists. *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela*, 991 F.2d 42, 46 (2d Cir. 1993). A valid arbitration agreement requires "a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement[.]" *Matter of Express Indus. & Term. Corp.* v. *N.Y. State Dept. of Transp.*, 93 N.Y.2d 584, 589 (1999).

By signing a written instrument, a party creates presumptive evidence of its assent to enter into a binding agreement. *See, e.g.*, *Gold* v. *Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004); *Gillman* v. *Chase Manhattan Bank*, 73 N.Y.2d 1, 11 (1988) (holding that a party's signature generally creates a presumption that the party assented to the terms of the agreement). Failure to read or understand a contract does not relieve a signer of its obligations thereunder. *See, e.g.*, *In re Lehman Bros. Holdings Inc.*, 478 B.R. 570, 587 n.19 (S.D.N.Y. 2012), *aff'd sub nom. In re Lehman Bros. Holdings Inc.*, 761 F.3d 303 (2d Cir. 2014); *see also Brandywine Pavers, LLC* v. *Bombard*, 970 N.Y.S.2d 653, 655 (4th Dep't 2013) ("[A] party cannot generally avoid the effect of a document on the ground that he or she did not read it or know its

---

[2] Where, as here, a court exercises supplemental jurisdiction over New York state law claims, the court applies New York choice of law rules, *see North Atl. Instruments, Inc.* v. *Haber*, 188 F.3d 38, 43 (2d Cir. 1999), according to which claims that involve regulation of conduct are determined by the "law of the locus jurisdiction," *AroChem Int'l, Inc.* v. *Buirkle*, 968 F.2d 266, 270 (2d Cir. 1992) (citing *Schultz* v. *Boy Scouts of America, Inc.*, 65 N.Y.2d 189, 198 (1985)). Because all acts and omissions giving rise to the claims in this case took place in New York, the Court applies New York law to assess whether the parties agreed to arbitrate.

contents." (alterations and internal quotation marks omitted)).  This is equally true where the signer's failure to understand the terms of the contract stems from the signer's illiteracy or other language barriers.  *See Horvath* v. *Banco Comercial Portugues, S.A.*, No. 10 Civ. 4697 (GBD), 2011 WL 666410, at *4 (S.D.N.Y. Feb. 15, 2011) (collecting cases).

A party that has signed a contract may be relieved from its attendant obligations if a court finds — as Plaintiffs argue this Court should do — that the contract is unconscionable.  Under New York law, a contract is unconscionable when it is "so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms."  *Gillman*, 73 N.Y.2d at 10 (internal quotation marks omitted).  That generally requires a finding of both procedural and substantive unconscionability.  *See id.*  "The procedural element of unconscionability concerns the contract formation process and the alleged lack of meaningful choice; the substantive element looks to the content of the contract[.]"  *State* v. *Wolowitz*, 468 N.Y.S.2d 131, 145 (2d Dep't 1983); *see also Desiderio* v. *Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 207 (2d Cir. 1999) ("A contract or clause is unconscionable when there is an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." (quotation marks omitted)).

Without more, an inability to speak English or to understand the terms of a contract is an insufficient cause for unconscionability.  *See, e.g.*, *Victorio*,

2015 WL 2152703, at *15; *Ragone*, 595 F.3d at 122 ("New York courts have repeatedly ruled that even the fact that a prospective employee possesses an imperfect grasp of the English language will not relieve the employee of making a reasonable effort to have the document explained to him."). Language barriers will not justify a finding of unconscionability where there is "no evidence that high pressure tactics were used to cause the Plaintiffs to feel that they had no choice but to sign on the spot without reviewing the terms." *Victorio*, 2015 WL 2152703, at *13. It is only when "inequality [in bargaining power is] coupled with high pressure tactics that coerce an employee's acceptance of onerous terms [that a signatory can be considered to have] lacked a meaningful choice." *Brennan* v. *Bally Total Fitness*, 198 F. Supp. 2d 377, 382 (S.D.N.Y. 2002) (internal citation omitted).

### 3.     Collective Arbitration and "Questions of Arbitrability"

Defendants seek to compel arbitration on an individual basis only. Plaintiffs, for their part, ask the Court to order arbitration on a collective basis, if at all. Who decides if collective arbitration is permissible — whether the arbitrator or the court — turns on whether the question can meaningfully be described as a "question of arbitrability." *Howsam* v. *Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). In *Howsam*, the Supreme Court explained that "questions of arbitrability" implicate "whether the parties have submitted a particular dispute to arbitration" and are "issue[s] for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." *Id.* (internal citation omitted). The Court specifically rejected the proposition that "any

13

potentially dispositive gateway question" constitutes a question of arbitrability, noting that the latter is "far more limited [in] scope." *Id.*

The phrase "question of arbitrability" is "applicable in the kind of narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter[.]" *Howsam*, 537 U.S. at 83. For example, it applies to disputes over whether "the parties are bound by a given arbitration clause," *id.* at 84, which might emerge from questions over the arbitration agreement's validity or its applicability to the underlying claims. *See, e.g.*, *First Options of Chicago, Inc.* v. *Kaplan*, 514 U.S. 938, 943-46 (1995) (concluding that a court should decide whether the arbitration contract binds parties who did not sign the agreement); *John Wiley & Sons, Inc.* v. *Livingston*, 376 U.S. 543, 546-47 (1964) (concluding that a court should decide whether an arbitration agreement survives a corporate merger and binds the resulting corporation); *Granite Rock*, 561 U.S. at 298-300 (concluding that a court should decide whether a controversy falls within the arbitration clause of a collective bargaining agreement).

The phrase "question of arbitrability" does not apply to "other kinds of general circumstance where parties would likely expect that an arbitrator would decide the gateway matter," including "procedural questions which grow out of the dispute and bear on its final disposition." *Howsam*, 537 U.S. at 84 (internal quotation marks omitted). Generally, the interpretation of specific provisions of the arbitration agreement are not questions of arbitrability and are reserved for the arbitrator. *See, e.g.*, *Tarulli* v. *Circuit City Stores, Inc.*, 333

F. Supp. 2d 151, 158 (S.D.N.Y. 2004) ("[O]nce a district court determines that the arbitration agreement is valid and the parties have agreed to arbitrate, the arbitrator should determine the meaning of specific provisions of the arbitration agreement at issue." (internal citations omitted)); *Ciago* v. *Ameriquest Mortg. Co.*, 295 F. Supp. 2d 324, 330 (S.D.N.Y. 2003) ("Once this Court determines that the parties have agreed to arbitrate, the validity and meaning of specific provisions within the Agreement to arbitrate is a matter for the arbitrator to decide.").

The Supreme Court and the Second Circuit have not definitively answered the particular question presented here: whether the availability of collective arbitration is a "question of arbitrability." However, two Supreme Court cases establish a framework within which lower courts may assess the question. In *Green Tree Fin. Corp.* v. *Bazzle*, 539 U.S. 444 (2003), a four-Justice plurality of the Supreme Court found that, when an arbitration agreement is silent on the availability of class arbitration, the question should be reserved for the arbitrator to decide in the first instance. The *Bazzle* plurality reasoned that the availability of class arbitration is not a question of arbitrability because it "concerns neither the validity of the arbitration clause nor its applicability to the underlying dispute between the parties." *Id.* at 452. Instead, the plurality held that the question "concerns contract interpretation and arbitration procedures" and that "matter[s] of contract interpretation should be for the arbitrator, not the courts, to decide." *Id.* at 453.

In *Stolt-Nielsen S.A.* v. *AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010), the Court reviewed an arbitral decision that permitted class arbitration under an arbitration agreement that was silent on the issue. The Court noted that, in *Bazzle*, "no single rationale commanded a majority," *id.* at 678, and that "only the plurality decided the question [whether an arbitrator, not a court, must decide whether a contract permits class arbitration]," *id.* at 680. The Court then cautioned against finding an implicit assent to class arbitration. It held that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Id.* at 684. It went on to explain that "[a]n implicit agreement to authorize class-action arbitration ... is not a term that the arbitrator may infer solely from the fact of the parties' agreement to arbitrate ... because class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator." *Id.* at 685. It is worth noting, as Justice Ginsburg did in dissent, that (i) "the Court does not insist on express consent to class arbitration," but rather insists only on there being a contractual basis to conclude that the parties agreed to class arbitration; and (ii) the Court "spares from its affirmative-authorization requirement contracts of adhesion presented on a take-it-or-leave-it basis." *Id.* at 699.

Since the Supreme Court decided *Stolt-Nielsen*, some courts in this District have ordered arbitration on an individual basis rather than reserving the question for the arbitrators. For example, in *Anwar* v. *Fairfield Greenwich*

16

*Ltd.*, 950 F. Supp. 2d 633, 637 (S.D.N.Y. 2013), a putative class action by shareholders against financial advisors, the court ordered arbitration on an individual basis after finding that "the language of the [arbitration agreement] clearly does not contain any provision or language that anticipates class arbitration." Similarly, in *Sanders* v. *Forex Capital Mkts., LLC*, No. 11 Civ. 0864 (CM), 2011 WL 5980202, at *10 (S.D.N.Y. Nov. 29, 2011), the court held that the parties must arbitrate "on an individual basis as there is no provision in the contract which contemplates class arbitration."[3]

But most courts in this Circuit that have addressed the issue have held that the availability of class or collective arbitration is for the arbitrator to decide. In *In re A2P SMS Antitrust Litigation*, No. 12 Civ. 2656 (AJN), 2014 WL 2445756, at *12 (S.D.N.Y. May 29, 2014), the court was "persuaded by the reasoning in *Bazzle* and h[e]ld that the availability of class arbitration is an issue to be resolved by the arbitrators in the first instance" because "the issue raised is not one of enforcement of an arbitration agreement or the power of the arbitrator to hear a dispute, but rather the form of the proceedings as to a dispute that is … subject to the arbitrator's authority." The court noted that "*Bazzle* remains the most pertinent authority and, in the absence of other

---

[3] It is worth noting that Defendants cite two additional cases — *Sutherland* v. *Ernst & Young LLP*, 768 F. Supp. 2d 547 (S.D.N.Y. 2011), *rev'd and remanded*, 726 F.3d 290 (2d Cir. 2013), and *Chen-Oster* v. *Goldman, Sachs & Co.*, 785 F. Supp. 2d 394 (S.D.N.Y. 2011) — in their opening brief to support their claim that the Court should decide the collective arbitration question. Neither case is relevant here: In *Sutherland*, the court did not reach the threshold question of who decides the availability of class arbitration; and in *Chen-Oster*, the parties agreed that the question of class arbitration should be decided by the court.

Supreme Court or Second Circuit precedent or a clear trend to the contrary among the lower courts, the Court assigns its analysis substantial weight." *Id.* at 11.

In *Wells Fargo Advisors, L.L.C.* v. *Tucker*, 195 F. Supp. 3d 543 (S.D.N.Y. 2016), the court held that the arbitrator, rather than the court, must determine whether former employees could arbitrate their FLSA and NYLL claims on a collective basis. It noted that, "[w]hile the Supreme Court and Second Circuit have yet to issue binding precedent, the weight of authority among district courts in the Circuit is that the arbitrator, rather than the Court, should decide questions regarding the availability of class arbitration." *Id.* at 547. Other courts have held similarly. *See, e.g.*, *Edwards* v. *Macy's Inc.*, No. 14 Civ. 8616 (CM) (JLC), 2015 WL 4104718, at *11 (S.D.N.Y. June 30, 2015) ("the issue of whether the language [in the arbitration agreement] authorizes class-wide arbitration is for the arbitrators in the first instance, not for the court"); *Guida* v. *Home Sav. of America, Inc.*, 793 F. Supp. 2d 611 (E.D.N.Y. 2011) (availability of collective arbitration was a procedural question involving contract interpretation and was to be determined by arbitrator); *see also Rice Co.* v. *Precious Flowers Ltd.*, No. 12 Civ. 0497 (JMF), 2012 WL 2006149, at *4 (S.D.N.Y. June 5, 2012) ("courts have uniformly held that, absent a clear agreement to the contrary, the question of whether arbitration proceedings should (or should not) be consolidated is a procedural matter to be decided by the arbitrators, not by a court"); *Safra Nat'l Bank of N.Y.* v. *Penfold Inv. Trading, Ltd.*, No. 10 Civ. 8255 (RWS), 2011 WL 1672467, at *3 (S.D.N.Y. 2011)

("Numerous courts have ruled that the propriety of consolidated arbitration proceedings is an issue to be determined by the arbitrator, not the court.").

**B.  Analysis**

**1.  The Parties Executed Valid, Enforceable Arbitration Agreements**

Plaintiffs concede that they each signed the Arbitration Agreement as a condition of their employment and that the Agreement was supported by valid consideration.  Plaintiffs contend, however, that the Agreement each of them signed is procedurally and substantively unconscionable and therefore void. Specifically, they claim that the Agreement is procedurally unconscionable because Plaintiffs do not read or understand English and were allegedly told to sign the Agreement without the opportunity first to review it in Plaintiffs' native languages.  Plaintiffs further argue that the Agreement is substantively unconscionable because it contains a confidentiality clause that, in Plaintiffs' view, violates *Cheeks*, 796 F.3d at 199, and dissuades employees from filing claims against Defendants.  The Court disagrees on both fronts.

**a.  The Agreement Is Not Procedurally Unconscionable**

Plaintiffs' procedural unconscionability claim rests on their assertions that they are "unable to read or understand any English"; were "asked by a Chinese speaking secretary at Hakkasan to sign the [Arbitration Agreement] without first having [them] translated to [us]"; and were told that "the document must be signed immediately."  (Zhu Decl. ¶¶ 4, 6; Leung Decl. ¶¶ 4, 6; Moy Decl. ¶¶ 4, 6).  Without more, that is insufficient to substantiate Plaintiffs' claim that the Agreement is procedurally unconscionable.  Plaintiffs

do not allege that they ever tried to negotiate the terms of the Agreement or that Defendants prevented them from doing so; that Plaintiffs requested and were denied a translated version of the Agreement or the opportunity to review it; or that Defendants used high-pressure or coercive tactics. Even if Defendants' secretary told Plaintiffs to sign immediately, that would not suffice to establish procedural unconscionability. *See, e.g.*, *Victorio*, 2015 WL 2152703, at *33 (enforcing arbitration agreements despite Plaintiffs' claims that they could not read English and felt pressured to sign the documents immediately where the Court found "no evidence that high pressure tactics were used [and where] there [wa]s no evidence that anyone actually uttered [] a threat").

Plaintiffs also produce no evidence that they took reasonable steps to have the Agreement translated or to obtain any explanations from the Defendants' secretary after being asked to sign the Agreement, even though that secretary spoke a Chinese dialect that each Plaintiff understood. Under New York law, it is incumbent upon parties who do not read or understand English to "make a reasonable effort to have the document explained to [them]." *Kassab* v. *Marco Shoes Inc.*, 723 N.Y.S.2d 352, 353 (1st Dep't 2001). Because Plaintiffs failed to do so, and because there is no evidence that Defendants employed coercion, deception, or high-pressure tactics, Plaintiffs' procedural unconscionability claim fails.

### b.     The Agreement Is Not Substantively Unconscionable

"While determinations of unconscionability are ordinarily based on [a] conclusion that both the procedural and substantive components [of unconscionability] are present, there have been exceptional cases where a provision of the contract is so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone." *Ragone*, 595 F.3d at 122.  An agreement is substantively unconscionable only "if it is so grossly unreasonable as to be unenforceable according to its literal terms and those contract terms are unreasonably favorable to the party seeking to enforce the contract." *Isaacs* v. *OCE Bus. Servs., Inc.*, 968 F. Supp. 2d 564, 569 (S.D.N.Y. 2013) (internal citation omitted).  Here, Plaintiffs argue that the Arbitration Agreement is unconscionable because it contains a confidentiality clause that, in Plaintiffs' view, violates *Cheeks* and deters employees from bringing claims against Defendants.  Like their procedural challenges, Plaintiffs' substantive unconscionability argument fails.

To begin with, the Arbitration Agreement's confidentiality requirements apply equally to Plaintiffs and Defendants, and the terms of the Agreement are not one-sided.  Courts in this District have repeatedly held that, "when both an employer and its employees are bound to an agreement to arbitrate, when the terms of the agreement are equally applicable to both parties, and when the employer bears any unreasonable cost of the arbitration, the arbitration agreement is not unreasonably favorable to the employer."  *See, e.g.*, *Isaacs*, 968 F. Supp. 2d at 569 (collecting cases).  Here, all of the terms of the

Arbitration Agreement — including those in the confidentiality clause — apply equally to Plaintiffs and Defendants, and Defendants bear all of the arbitration costs. For this reason, the confidentiality clause cannot be said to render the Arbitration Agreement substantively unconscionable.

In addition, the Arbitration Agreement contains a severability clause and a saving clause. The former states, in relevant part, that "[t]he provisions of this Agreement are severable, and if any provision is determined to be unenforceable, then the remaining provisions shall remain in full effect." (Arb. Agmt. 2). The latter qualifies the confidentiality clause's prohibition on disclosure with the phrase, "unless otherwise required by law." (*Id.*). Because the Court reserves questions of contract interpretation to the arbitrator in the first instance, it declines to analyze these clauses. It does, however, note that if the arbitrator were to decide that the confidentiality clause is unenforceable under *Cheeks*, that would not necessarily void the entire agreement. Plaintiffs would still have to show that the confidentiality clause is not severable or subject to the saving clause, something the Plaintiffs have not even attempted to do here. For this reason, and because the confidentiality requirements apply equally to Plaintiffs and Defendants, the Court finds that the Arbitration Agreement is not substantively unconscionable.

### 2. The Arbitration Agreement Encompasses Plaintiffs' Claims

Having found the Arbitration Agreement to be enforceable, the Court next considers whether it is applicable. Courts generally construe arbitration clauses broadly. *See, e.g.*, *McMahon Sec. Co. L.P.* v. *Forum Capital Mkts., L.P.*,

35 F.3d 82, 88 (2d Cir. 1994) ("federal policy favoring arbitration requires us to construe arbitration clauses as broadly as possible" (internal quotation marks omitted)).  That is particularly true where the agreement itself uses broad language to define the scope of arbitration.  Such language "creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *Smith/Enron Cogeneration Ltd. P'ship* v. *Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 99 (2d Cir. 1999).

That the Arbitration Agreement contains broad language is irrefutable.  Under the Agreement, Plaintiffs must arbitrate "*any and all claims* [they] wish to assert against the Company … whether based upon statute, regulation, contract, tort, or other common law principles[.]"  (Arb. Agmt. 1 (emphasis added)).  The Agreement also includes a non-exhaustive list of claims covered by it.  That list explicitly references claims for "unpaid wages [and] violation of federal, state[,] or city laws forbidding discrimination, harassment, and retaliation on the basis of race, color, religion, gender, sexual orientation, age, national origin, [or] disability[.]"  (*Id.*).

Plaintiffs' claims fall squarely within the terms of the Agreement.  All are covered by the Agreement's reference to "any and all claims [Plaintiffs] wish to assert against the Company."  (Arb. Agmt. 1).  And most, if not all, are captured within the Agreement's illustrative list of arbitrable claims.  As but one example, the Agreement's reference to claims for "unpaid wages" (*id.*), covers Plaintiffs' FLSA and NYLL claims for unpaid overtime wages and spread-of-hour

23

premiums; and the Agreement's reference to claims for "violation of … laws forbidding discrimination" (*id.*), captures Plaintiffs' NYSHRL and NYCHRL claims. For these reasons, the Court finds that the Arbitration Agreement encompasses Plaintiffs' claims.

### 3. Federal Law Compels Arbitration of Plaintiffs' Claims

Contrary to Plaintiffs' arguments, federal law — specifically, the FLSA — does not operate to foreclose arbitration of any of Plaintiffs' claims. On the contrary, courts have consistently held that agreements to arbitrate claims arising from the employment context — including the claims brought here — are valid and enforceable. *See, e.g.*, *Adams*, 532 U.S. at 105; *Thomas* v. *Pub. Storage, Inc.*, 957 F. Supp. 2d 496 (S.D.N.Y. 2013) (granting motion to compel arbitration of claims of discrimination brought under NYSHRL and NYCHRL); *Sinnett* v. *Friendly Ice Cream Corp.*, 319 F. Supp. 2d 439 (S.D.N.Y. 2004) (granting motion to compel arbitration of FLSA claims).[4]

### 4. The Availability of Collective Arbitration Is a Question for the Arbitrator to Decide in the First Instance

The remaining issues implicated by Defendants' motion concern the allocation of authority to decide arbitration-related issues between the Court and the as-yet-unassigned arbitrator. Defendants claim that "the scope of the Arbitration Agreement is a 'gateway' issue [that is] for this Court to decide." (Def. Br. 8). Most courts in this District that have addressed the issue have

---

[4]     There is nothing in the record to suggest that some but not all claims are arbitrable. For this reason, and because none of the parties argue this point in their briefs, the Court declines to assess the fourth *Oldroyd* factor.

held to the contrary.  *See, e.g.*, *In re A2P SMS Antitrust Lit.*, 2014 WL 2445756, at *1; *Tucker*, 195 F. Supp. 3d at 543; *Edwards*, 2015 WL 4104718, at *1.  This Court agrees with its sister courts:  The availability of collective arbitration is a question for the arbitrator, not the court, to decide.

In *Bazzle*, the plurality held that the availability of collective arbitration "concerns neither the validity of the arbitration clause nor its applicability to the underlying dispute between the parties [and is a question of] contract interpretation and arbitration procedures."  539 U.S. at 452-53.  The *Bazzle* plurality pointed to the "sweeping language concerning the scope of the questions committed to arbitration," *id.* at 453, in concluding that the availability of collective arbitration is one for the arbitrator to decide.  Here, the relevant language is at least as sweeping as in *Bazzle*.  The *Bazzle* arbitration provision covered "[a]ll disputes, claims, or controversies arising from ... this contract or the relationships which result from this contract[.]"  *Id.* at 448. Here, the Arbitration Agreement covers "any and all claims [Plaintiffs] may wish to assert against the Company, other than those specifically excluded below[.]" (Arb. Agmt. 1).  Unlike in *Bazzle*, the arbitration provision here covers all claims that Plaintiffs might bring against Defendants, irrespective of their provenance.  Such broad language militates strongly in favor of reserving the question for the arbitrator, particularly against the backdrop of a "federal policy favoring arbitration agreements."  *Greenwood*, 565 U.S. at 98.

In reserving the question for the arbitrator, this Court is guided by the Supreme Court's characterization of questions of arbitrability as "narrow" and

"limited." *Bazzle*, 539 U.S. at 452; *see also Howsam*, 537 U.S. at 83-84 (explaining that "questions of arbitrability" should not be read to include "any potentially dispositive gateway question" merely because "its answer will determine whether the underlying controversy will proceed to arbitration on the merits"). Questions of arbitrability arise only in the "narrow circumstances where contracting parties would likely have expected a court to have decided the gateway matter." *Howsam*, 537 U.S. at 83-84. The Court is unpersuaded that the availability of collective arbitration falls within the narrow bounds that the Supreme Court has established for "questions of arbitrability."

Defendants argue that *Stolt-Nielsen* requires this Court to hold otherwise. (Def. Br. 8-9). They are wrong, and their reliance on *Stolt-Nielsen* is misplaced. To begin with, the *Stolt-Nielsen* parties stipulated that the arbitration agreement was silent on the availability of collective arbitration, 559 U.S. at 668, and the Court's holding hinged on the agreement's silence on the matter, *id.* at 684. Here, the parties have made no such stipulation and, in fact, claim that the contract is *not* silent on the question of collective arbitration. To be sure, Plaintiffs and Defendants disagree on *what* the Arbitration Agreement says, but they both believe that the Agreement speaks — even if only implicitly so — to the question. Defendants claim that "the language of the Arbitration Agreement establishes the Parties' intent to litigate disputes only on an individualized basis." (Def. Br. 10). Plaintiffs, for their part, argue that the Agreement "contains language that implies th[e] absence of any sort of collective action waiver." (Pl. Opp. 8). Unlike in *Stolt-Nielsen*, the

parties here disagree on how properly to interpret the contract. Such contract interpretation disputes are for the arbitrator to decide in the first instance. *See, e.g.*, *Tarulli*, 333 F. Supp. 2d at 158.

In addition, in *Stolt-Nielsen*, the parties were "sophisticated business entities" operating in an industry where "there is no tradition of class arbitration." 559 U.S. at 684. Justice Ginsburg, in a dissenting opinion, noted that "by observing that the parties [here] are sophisticated entities, and that it is customary for the shipper to choose the charter party that issued for a particular shipment, the Court apparently spares from its affirmative-authorization requirement [other] contracts[.]" *Id.* at 699 (internal quotation marks omitted). Here, the parties do not claim to be sophisticated business entities; rather, they are individual employees who cannot read or understand English, and who claim to have been instructed to sign the Arbitration Agreement immediately and without the opportunity to review translated versions of the Agreement, much less to negotiate its terms. (Zhu Decl. ¶¶ 4, 6-7; Leung Decl. ¶¶ 4, 6-7; Moy Decl. ¶¶ 4, 6-7).

Finally, the *Stolt-Nielsen* Court never reached the "who decides" question and, for this reason, cannot control the issue. The *Stolt-Nielsen* Court merely held that a party "may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." 559 U.S. at 684. All that means is that whoever decides the issue — whether a court or the arbitrator — may not compel a party to

arbitrate on a collective basis absent some indication from the contract's terms that the parties have consented to such procedures.

### 5. Whether the Confidentiality Provision Renders the Arbitration Agreement Unenforceable Is Similarly Reserved for the Arbitrator

Plaintiffs contend that the Agreement's confidentiality provision renders the entire contract substantively unconscionable and void. They argue that the confidentiality provision violates *Cheeks* and seeks to "ensure that as few employees as possible br[ing] claims under the FLSA, in clear contrast to the overarching public policy motivations behind the [FLSA]." (Pl. Opp. 6).

Defendants respond by asserting that *Cheeks* "has no bearing on the enforceability of Plaintiffs' arbitration agreements." (Def. Reply 4). They further note that the confidentiality provision is protected by a saving clause: "the information and documents in connection with the arbitration shall be confidential '*unless required by law*.'" (*Id.* (citing Arb. Agmt. 2) (emphasis added)). Though they elected not to do so, Defendants could have also argued that, because the Agreement contains a severability clause, any infirmity that might affect the confidentiality clause would not render the rest of the agreement unenforceable.

The Court declines to resolve this issue. Doing so would require the Court to engage in inquiries involving contract interpretation that are properly reserved for the arbitrator. For example, the Court would have to determine the scope of the saving clause and the severability clause in the Arbitration Agreement, as well as the interaction between those clauses and the

confidentiality provision.  These are precisely the sorts of inquiries that the *Bazzle* plurality and courts in this District have held are for the arbitrator to decide in the first instance.  Nothing in the Defendants' submissions persuades this Court to hold otherwise.

### CONCLUSION

Defendants' motion to compel arbitration is GRANTED, though Defendants' request that the Court order individual arbitration in this matter is DENIED.  That question, like the question regarding the validity of the confidentiality clause, is to be resolved by the arbitrator in the first instance.

Pursuant to binding Second Circuit precedent, the Clerk of Court is ORDERED to stay the case pending the outcome of arbitration.  *See Katz* v. *Cellco P'ship*, 794 F.3d 341, 345 (2d Cir.), *cert. denied,* 136 S. Ct. 596 (2015).

SO ORDERED.

Dated:  November 28, 2017
        New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge